JAMES DARVILLE, RESPONDENT, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, APPELLANT.

Submitted March 26, 1917—Decided June 18, 1917.

The plaintiff having fallen from a county bridge, by reason of the giving way of an iron rail, and there being testimony from which the jury might infer negligence of the defendant, in the performance of its statutory duty of maintenance and repair, as well as the question of the defendant's ownership of the rail, and of the *locus in quo;* and also testimony from which an inference might reasonably be drawn, that the defendant assumed responsibility and exercised control over the rail in question— *Held*, that a motion to nonsuit, as well as a motion to direct a verdict were properly refused.

---

On appeal from the Essex Circuit.

For the respondent, *Hugh B. Reed.*

For the appellant, *Harold A. Miller.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff was injured by falling from the entrance to a public bridge, crossing Third river, at Nutley, in the county of Essex. The cause of his fall he attributes to the negligence of the defendant in failing to use reasonable care to keep the rail or guard of the approach to the bridge in a reasonably safe condition.

The plaintiff fell while attempting to lean upon an iron guard rail which ran from the bridge at right angles to an adjacent blacksmith shop, out of which the plaintiff came and proceeded to cross the bridge. While he was stopping to answer the salutation of a friend, he placed his hand and weight upon the rail, when it gave way and precipitated him ten feet to the bed of the stream, producing the injuries which present the basis of this suit.

The defendant denies responsibility, insisting that the rail in question was not placed there by the county, and that at the time of the injury the plaintiff was not upon the public thoroughfare, but was upon private property adjoining the bridge, upon which was the rail, and that therefore the county was under no legal liability to maintain or repair it.

The alleged contributory negligence of the plaintiff, under the circumstances, presented the final ground of defence. These issues the trial court treated as jury questions, and refused a motion to nonsuit, and to direct a verdict based thereon.

There was testimony sufficient in the case from which a jury might infer that the county at the time the bridge was erected constructed the rail in question. There was testimony also from which a jury might conclude that the county recognizing its responsibility for the maintenance of the rail had at least six months prior to the accident caused the rail, with the rest of the structure to be painted, and that after the accident the county engineer ordered the rail repaired. The latter fact, while not directly evidential of liability, might be accepted as a recognition or admission by the defendant, of the extent of the defendant's ownership, or control of the rail.

These facts were met by counter evidence from which the jury might infer the absence of either ownership or maintenance, upon the part of the defendant, and some testimony from which it was argued that the *locus in quo,* upon which the plaintiff stood at the time of his fall, was private property, over which the defendant could not legally exercise any act of control or ownership.

These questions manifestly presented a jury question, involving, as they did, inquiries as to questions of fact, and not of law, and in leaving them to the jury the rule is common place that the trial court committed no legal error.

The production by the defendant of the plans for the construction of the bridge might have thrown light upon the question of the original construction, and have shown the presence or absence of the rail in question, but the failure to produce it left the question open, assuming the *locus in quo* to be private property, whether, during an interim of years since the original construction, the defendant may not have assumed the added responsibility, and imposed the corresponding liability upon itself by accepting permission, tantamount to a license from the adjoining landowner, to keep and maintain the rail as part of the structure, a legal status which the jury might reasonably infer in fact existed in view of the acts of supervision and maintenance, which the proof showed the defendant exercised over the entire structure.

The liability of defendant being entirely statutory (*Pamph. L.* 1860, *p.* 285; *Comp. Stat., p.* 304, § 9) ; *Maguth* v. *Freeholders of Passaic,* 72 *N. J. L.* 226; *Freeholders of Sussex* v. *Strader,* 18 *Id.* 108, the trial court properly left these questions to the jury, premising its comments upon the situation, with the fundamental considerations, that the defendant's liability was conditioned upon their answer to the inquiries whether the rail in question was part of the bridge, and whether the plaintiff at the time of the accident was upon defendant's property, or upon private property, over which the defendant assumed no responsibility and exercised no control.

The charge of the trial court, and its rulings upon testimony, were in consonance with these principles of. liability, and the judgment will therefore be affirmed.

*For affirmance*—The Chancellor, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, JJ. 14.

*For reversal*—None.